IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**IRENE L. MONTEZ,**

       **Plaintiff,**

vs.                                                                                        No.  03cv0437  DJS

**JO ANNE B. BARNHART,**
**COMMISSIONER OF SOCIAL SECURITY,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's (Montez') Motion to Reverse Administrative Agency Decision or, in the Alternative, a Remand of Said Decision **[Doc. No. 6]**, filed September 11, 2003, and fully briefed on January 12, 2004.  The Commissioner of Social Security issued a final decision denying Montez' claim for disability insurance benefits.  Having considered the arguments, pleadings, administrative record, relevant law, and being otherwise fully informed, the Court finds the motion to remand for a rehearing is well taken and will be GRANTED.

### I.  Factual and Procedural Background

Montez, now fifty-four years old, filed her application for disability insurance benefits on February 23, 2001, alleging disability since August 11, 2000, due to sigmoid diverticulosis, chronic abdominal pain, stress incontinence, asthma, right knee arthritis, dyspepsia, pleuritic chest pain, and TMJ syndrome.  Tr. 75.  Montez has an high school equivalent education (GED) and beauty college training.  Tr. 81.  Montez has past work experience as an office manager/assistant manager, support manager, census taker, housekeeper, and nurses aide.  Tr. 20.  On November

25, 2002, the Commissioner's Administrative Law Judge (ALJ) denied benefits. The ALJ found Montez' stress incontinence and TMJ were "nonsevere" impairments. Tr. 16. The ALJ also found Montez' other alleged impairments were severe but did not meet or equal in severity any of the disorders described in the Listing of Impairments, Subpart P, Appendix 1, Regulations No. 4. *Id.* Specifically, the ALJ reviewed Listings 1.02A (musculoskeletal system– major dysfunction of a joint(s)); 1.02B (musculoskeletal system– involvement of one major peripheral joint); 3.02A (respiratory system– chronic obstructive pulmonary disease); 3.03 (asthma); 5.07 (regional enteritis); and 13.15 (neoplastic diseases– abdomen). Tr. 16-17. The ALJ further found Montez retained the residual functional capacity (RFC) to perform light work. Tr. 18. As to her credibility, the ALJ found her "testimony and subjective allegations . . . not consistent with the objective evidence and not fully supported and credible." Tr. 19. On February 14, 2003, the Appeals Council denied Montez' request for review of the ALJ's decision. Hence, the decision of the ALJ became the final decision of the Commissioner for judicial review purposes. Montez seeks judicial review of the Commissioner's final decision pursuant to 42 U.S.C. § 405(g).

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether he applied correct legal standards. *Hamilton v. Secretary of Health and Human Services,* 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

Moreover, "all of the ALJ's required findings must be supported by substantial evidence," *Haddock v. Apfel*, 196 F.3d 1084, 1088 (10th Cir. 1999), and all of the relevant medical evidence of record must be considered in making those findings, *see Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir. 1989). "[I]n addition to discussing the evidence supporting his decision, the ALJ must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects." *Clifton v. Chater*, 79 F.3d 1007, 1010 (10th Cir. 1996). Therefore, while the Court does not reweigh the evidence or try the issues de novo, *see Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993), the Court must meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings, in order to determine if the substantiality test has been met. *See Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994).

### III.  Discussion

In order to qualify for disability insurance benefits or supplemental security income, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity. *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993)(citing 42 U.S.C. §423(d)(1)(A)). The regulations of the Social Security Administration require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications. 20 C.F.R. § 404.1520 (a-f). The sequential evaluation process ends if, at any step, the Commissioner finds the claimant is not disabled. *Thompson*, 987 F.2d at 1487.

At the first four levels of the sequential evaluation process, the claimant must show she is not engaged in substantial gainful employment, she has an impairment or combination of

impairments severe enough to limit her ability to do basic work activities, and her impairment meets or equals one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Part 404, Subpt. P, App. 1, or she is unable to perform work she had done in the past. 20 C.F.R. §§ 404.1520 and 416.920.  At the fifth step of the evaluation, the burden of proof shifts to the Commissioner to show the claimant is able to perform other substantial gainful activity considering her residual functional capacity, age, education, and prior work experience. *Id.*

In support of her motion to reverse, Montez makes the following arguments: (1) the ALJ erred in evaluating her abdominal pain; and (2) the ALJ erred in his credibility determination.

### A.  ALJ's Evaluation of Montez' Abdominal Pain

In his decision, the ALJ found:

The claimant's status post ventral repair does not meet or equal Listings 5.07 and 13.15. There is no evidence of generalized carcinomatosis, retroperitoneal cellular sarcoma, or ascites.  On August 25, 1999 the claimant underwent a colonoscopy.  The claimant was diagnosed with mild cecal and ascending colon inflammation, mild colitis was ruled-out. She was also diagnosed with mild sigmoid diverticulosis. (Exhibit 3F/43).  An abdomen radiology report dated January 20, 2000, revealed a sliding esophageal hiatal hernia, with GE reflux.  There was no evidence of peptic ulceration or small bowel pathology. (Exhibit 3F/29).  An x-ray taken of the chest including the lower rib taken on November 15, 2000 showed no abnormalities.  There was non-obstruction gaseous distention of the colon. (Exhibit 3F/18).  A CT scan of the abdomen taken on March 9, 2001, showed a small ventral hernia containing a small bowel. (Exhibit 3F/5).  A subsequent radiology report of the abdomen taken on March 23, 2001, revealed a normal GI gas pattern.  There was a small midline ventral hernia, containing an isolated loop of small bowel, although there was no indication of bowel obstruction.  There was incidental diverticulum, 2nd portion of duodenum. (Exhibit 3F/3).  Dr. Dennis Worthington, the claimant's treating physician indicated in his medical report dated March 27, 2001 that the claimant's small bowel enteroclysis study was negative. (Exhibit 10F/6).  On April 12, 2001 the claimant underwent a repair of a large symptomatic ventral abdominal incisional hernia, with implantation of surgical mash. (Exhibit 4F/2).  A subsequent medical report dated April 26, 2001, indicated that the claimant was recovering nicely. (Exhibit 5F/2).  Thus, the claimant's status post ventral hernia repair does not meet the severity criteria of Listings 5.07 and 13.15.

Tr. 17.  The ALJ also referred to a January 19, 2000 medical report stating Montez continued to experience abdominal pain.  Tr. 18.  However, the ALJ noted, "An abdominal studies that included x-rays, sonograms, EGD's (esophagogastroduodenoscopy), and colonoscopy, were taken and all revealed no pathology."  *Id.*

Montez contends the medical record is "replete with reported and documented subjective and objective assessment of chronic, severe and persistent abdominal pain."  Pl.'s Mem. Supp. Mot. Reverse at 2.  Additionally, Montez argues the ALJ failed to consider other factors in finding her abdominal pain not disabling.  Montez argues the ALJ failed to consider the level of medication she required, her medical and non-medical attempts to relieve her pain, the frequency of her medical contacts, and her restricted daily activities.  *Id.*

The record indicates Montez has a long history of abdominal pain that started sometime prior to **1996**.  Tr. 188 (February 15, 1996 report– postoperative diagnosis– nausea, vomiting and abdominal pain of uncertain etiology).  Because of her complaints of chronic, severe abdominal pain, Dr. Beechie and Dr. Worthington, a gastroenterologist, ordered several diagnostic procedures to determine the source of the problem.  *See e.g.*, Tr. 188 (February 15, 1996– EGD with duodenal, pyloric, and gastric biopsies); Tr. 187(January 24, 1998– gastric and esophageal biopsies indicating mild chronic gastritis and normal esophageal biopsy);  Tr. 178, 177, 229  (August 25, 1999– colonoscopy with biopsies "with no evidence of colitis or other pathology to explain her unusual pain pattern"); Tr. 163 (January 20, 2000– Upper GI Series with Small Bowel Series indicating presence of a "sliding esophageal hiatal hernia with GE (gastroesophageal) reflux); Tr. 152 (November 11, 2000– x-rays of abdomen; no abnormality noted); Tr. 147 (February 23, 2001– gastric body and antrum with mild chronic gastritis and GE

junction biopsy negative); Tr. 139 (March 9, 2001– CT Scan of abdomen; small ventral hernia otherwise "no other abnormality noted"); Tr. 225 (March 27, 2001– small bowel enteroclysis study was negative).

Montez also had surgical procedures performed in an attempt to address her abdominal pain. On October 28, 1999, Dr. John Vigil, a surgeon, evaluated Montez for right side abdominal pain. Tr. 168. Dr. Vigil diagnosed Montez with biliary dyskinesia. Tr. 169. On November 4, 1999, Dr. Vigil performed a cholecystectomy. Tr. 166. On November 6, 1999, Dr. Vigil noted Montez was doing well and discharged her. Tr. 165. On April 3, 2001, Dr. Vakselis surgically repaired a ventral abdominal incisional hernia. Tr. 196. Significantly, Dr. Vakselis noted he had explained to Montez and her sister that the surgical procedure would not take care of her epigastric pain. *Id.*

After her surgeries, Montez continued to complain of abdominal pain and often sought medical treatment from Drs. Beechie and Worthington. However, her physicians did not have a definitive diagnosis and continued to treat her symptomatically. On **January 14, 2002**, Dr. Beechie noted "She is being followed by Dennis Worthington, M.D. because of her abdominal pain and yet there is still no solution to her problem. Tr. 251. On **March 28, 2002**, Dr. Worthington evaluated Montez for "worsening abdominal pain with no relief with medication." Tr. 239. Dr. Worthington diagnosed Montez with non-ulcer dyspepsia and noted "not doing well with Klonopin." Dr. Worthington prescribed Erythromycin. *Id.*

In evaluating a claim of disabling pain, the ALJ must consider (1) whether there is objective medical evidence of a pain producing impairment, (2) whether there is a loose nexus between this objective evidence and the pain, and (3) whether, in light of the evidence, both

6

objective and subjective, the pain is in fact disabling. *Glass v. Shalala,* 43 F.3d 1392, 1395 (10th Cir. 1994)(citing *Luna v. Bowen*, 834 F.2d 161, 163 (10th Cir. 1987)).

As Montez correctly points out, when a claimant complains of a pain-producing impairment, the ALJ is required to consider claimant's complaints of pain by evaluating her/his use of pain medication, attempts (medical or nonmedical) to obtain relief, the frequency of her medical contacts, and the nature of claimant's daily activities, as well as subjective measures of credibility including the consistency or compatibility of nonmedical testimony with the objective medical evidence. *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir 1995).

The record as a whole supports Montez' complaints of chronic abdominal pain. However, "a claimant's subjective complaint of pain is by itself insufficient to establish disability." *See Talley v. Sullivan*, 908 F.2d 585, 587 (10th Cir. 1990). In this case, there is also objective evidence to support her abdominal pain. Dr.Worthington diagnosed her with non-ulcer dyspepsia. In non-ulcer dyspepsia there is "discomfort often described as indigestion, gaseousness, fullness, or gnawing or burning pain localized to the upper abdomen or chest that <u>has no specific cause on diagnostic evaluation</u>." *The Merck Manual* 236 (17th ed. 1999)(emphasis added). Nonetheless, "'[t]o be disabling, pain must be so severe, by itself or in conjunction with other impairments, as to preclude any substantial gainful employment.'" *Brown v. Bowen*, 801 F.2d 361, 362-63 (10th Cir. 1986)(quoting *Dumas v. Schweker,* 712 F.2d 11545, 1552 (2d Cir. 1983)). In determining whether Montez's pain was disabling, the ALJ correctly examined the medical record and evaluated Montez' credibility. *Id.* In this case, the ALJ found Montez not credible.

**B.  Credibility Determination**

Credibility determinations are peculiarly the province of the finder of fact and will not be upset when supported by substantial evidence. *Diaz v. Secretary of Health & Human Servs.*, 898 F.2d 774, 777 (10th Cir. 1990). However, "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Huston v. Bowen,* 838 F.2d 1125, 1133 (10th Cir. 1988). Failure to indicate the credibility choices made and the basis for those choices in resolving the crucial subsidiary fact or the truthfulness of subjective symptoms and complaints requires reversal and remand. *Kepler*, 68 F.3d at 391.

To support his credibility determination, the ALJ stated, "The claimant's description of the severity of pain has been so extreme as to appear implausible. Various tests have been administered to help explain her abdominal pain that have included x-rays, sonograms, EGD's, and colonoscopy, and all revealed no pathology. The claimant claims that the prescribed medications do not help relieve her pain, yet she takes them anyway." Tr. 19.

These statements indicates the ALJ may have relied on the lack of conclusive laboratory-type findings to confirm claimant's diagnosis and/or symptomatology. This was an improper basis for discrediting Montez' uncontroverted testimony. *See Pennington v. Chater*, No. 96-5177, 1997 WL 297684, at \*\*3 (10th Cir. June 5 1997)("We are aware of no medical procedures to objectively evaluate either the severity of a migraine or pain; and where no such conclusive tests exist, the failure to produce such tests is surely an improper basis for discrediting a claimant's uncontroverted testimony."); *see also, Sisco v. United States Dep't of Health & Human Servs.*, 10 F.3d 739, 743-44 (10th Cir. 1993) (holding that the ALJ improperly impeached

a claimant's unrebutted testimony because of the lack of a conclusive "dipstick" laboratory test for chronic fatigue syndrome).

In his decision, the ALJ also discredited Montez' complaints of severe pain on the basis of her testimony at the administrative hearing. The ALJ noted, "The claimant stated that she could walk for ½ block, stand for 5 minutes, and sit for 15 minutes. Yet she also stated that she sits with her father all day." Tr. 19. At the administrative hearing, the ALJ asked Montez, "What do you do all day long? Do you have pasttimes (sic) doing an activity or hobby or something?" Tr. 41. Montez responded, "What I do is I go and sit with my dad. My dad lives next door and so we just sit there and keep each other company." *Id.* Montez's testimony does not indicate she sat with her father all day. It appears to the Court that the ALJ misconstrued her testimony.

Based on the record as a whole, the Court finds that the ALJ's credibility determination is not supported by substantial evidence. The Court will remand to allow the ALJ to reevaluate Montez' complaints of severe pain. In addition, the ALJ should ask Drs. Beechie and Worthington to complete RFC forms. In light of Montez' multiple medical problems, Dr. Beechie, her primary care physician, may have invaluable insight as to whether her combined impairments significantly limit her ability to do basic work activities. Dr. Worthington' opinion, as a specialist, will assist the ALJ in redetermining Montez' RFC given the degree of her abdominal pain. Finally, the record indicates Montez' pain medication caused significant side effects such as dizziness and drowsiness. Tr. 221 ("forgetful & wobbly & dizzy secondary to Klonopin"). The ALJ should take this into consideration in his RFC determination. However, the Court does not require any result. This remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case.

A judgment in accordance with this Memorandum Opinion and Order will be entered.

	**DON J. SVET**
	**UNITED STATES MAGISTRATE JUDGE**